Ruffin, Chief Justice.
 

 The defendant’s case requires him to establish two points. First, that the will contains no disposition of the negroes in dispute; for if it does,' then the assent of the executor is wanting. Second, that as there is no such disposition, the issue of Fanny does not vest in the executor
 
 virtule ojicii,
 
 but belongs to the defendant as an advancement under the act of 1806,1 Rev. Stat. ch. 37, sec. 17.
 

 The last, as a general question, is an important one, and merits much consideratien. We do not, however, propose to discuss it, much less to decide it, in the present case, 'as our judgment will be for the plaintiff upon the first point. For this reason, we should not think it necessary to notice the doubt upon the act of 1806, did not the question so plainly
 
 *176
 
 present itself in the case as to render total silence on it liable mistaken for acquiescence in a
 
 dictum
 
 found upon it. There has certainly been no direct adjudication on the point. But in
 
 Stallings
 
 v.
 
 Stallings,
 
 1 Dev. Eq. Rep. 298, it fell
 
 obiter
 
 from a most respectable and reflecting Judge, that if if there be a will, and a slave, put into the possession of a child, be not disposed of in it — that is, should the parent die intestate
 
 as to it,
 
 the case would still be within the proviso, so as to make the gift good. As the parent there died without making a will at ail, there was nothing to call for those observations. Nor do we know, that either before or since, a remark has fallen from any other member of the Court, to indicate an opinion that any thing short of a dying
 
 without will
 
 would satisfy the words of the act — “ he or she dying intestate.” Certainly, the objections to the doctrine of a partial intestacy being within the act, are not few nor trivial. There is, in the first place, the intestacy mentioned in the act, without qualification. Next, the act speaks only of such parole gifts as may grow into
 
 advancements
 
 upon the death of the parent; and there is no such thing as advancement or hotch-pot in personalty upon a partial intestacy. Besides, if the gift be good because the will does not dispose of the slave, then it must be good so' far as by the will the slave is not disposed of.' Suppose, then, for example, that a father-put a negro into his son’s possession, and then by his will give the negro to the son for life, and does not limit over the remainder: is the son to have the remainder by force of the act, in opposition to the clear intent to the contrary, and the express limitation for life? These are some of the obstacles in the way of the construction, intimated in
 
 Stallings
 
 v.
 
 Stallings,
 
 which induce the Court to invite discussion on it, as an open question, when its determination may be necessary to the decision of a cause. Perhaps such discussion may commend the doctrine to our adoption; but at present we feel obliged to say, that as there has been no adjudication On it, we shall willingly hear all that can be said on either side of it. This we say with the less hesitation, because judge Henderson himself afterwards, in
 
 Bullock
 
 v.
 
 Bullock,
 
 2 Dev, Eq. 307,- notwithstanding some indistinct ex
 
 *177
 
 pressions similar to those before used by him, finally places his opinion upon the ground that the will carried the increase to the testator’s daughters, Susan and Lucy. He refers, indeed, and properly enough, to the act of 1806; but it is only as a guide to the testator’s intent, in aid of the Court, in putting a construction on the -will giving to it something of the nature or meaning of a confirmation. He does not intimate that those persons could take the increase, by force of the statute, as advancements. Unquestionably they could not; for if they did not pass under the bequest to the daughters, with the original stock, they must have been included in the residuary clause, which was found in that will. There was not even a partial intestacy there; and, consequently, the Court looked anxiously through the whole will, to ascertain the intent, that the daughters should take the increase born in their possession.
 

 Our decision, in the present case, is formed upon the same ground — and much upon the authority of
 
 Bullock
 
 v.
 
 Bullock. We
 
 think the negroes sued for, are disposed of in the will; and, consequently, that the plaintiff must recover, as his assent to the legacy does not appear. In the case just mentioned, the testator gave to his daughters the negroes, stocks of horses, cattle, household goods, &c., which he put into their possession respectively upon their marriage. The will was silent as to the increase. Yet it was held, that the issue born in the possession of the daughters, in the life time of the father, passed; because the reference to the possessions of the daughters shewed the testator meant them to take as from the delivery of the possession. Here the language is still stronger; for, besides referring to the possession, the will, in connexion with that reference, expressly mentions the increase.
 
 “I
 
 lend unto my daughter E., two negroes, named Fanny and Luke, during her natural life, and
 
 their increase.
 
 Fanny is now in her possession. She is to receive Luke after my decease.” The word “ increase,” is not unequivocal. Generally speaking, indeed, it carries only issue born after the' death of the testator; yet sometimes it has carried that born after the date of the will; and it may even take that born before the date of the will, upon the apparent intent. We have
 
 *178
 
 not the whole of this will before us; and, therefore, cannot say w^at m’ght be collected from other parts of it. But, upon the words of this clause, and the facts stated in the case, we think the testator intended to give all the issue Fanny had, &
 
 J '
 
 from the time he delivered her to his daughter. Why else did he make a reference to her possession? It was not necessary, for the purpose of identifying the negro; which was sufficiently done by her name. He had a different thing in his mind, in mentioning the possession of that negro; which was, to date the period from which the benefit -of the gift should commence; for, he goes on to say, as to the other negro, “ she is to
 
 receive
 
 him
 
 after my death?
 
 Undoubtedly we are to collect from this, that it was the purpose of the tes-, tator, unless he should revoke his will, to treat Fanny as his daughter’s,
 
 before his death;
 
 and that she should, at least, have the issue born after the making of the will. If so, we think we must hold, from the reference to her possession, that the effect of that is to be carried back to the time the possession was acquired. This is, in some degree, confirmed by the improbability that the testator intended
 
 these
 
 two small children to bo separated from their mother; and yet more so, by the circumstance that, whether effectually or not, is not material to this purpose, he gives over to his other children all he gives to the daughter, including the mother and issue, upon the death of the daughter, without having “ a lawful heir begotten of her body.”
 

 We think,'therefore, the plaintiff is entitled to recover at law; though, unless the slaves be wanted for the purpose of paying debts, the defendant may, in another forum, claim them as a part of his wife’s legacy.
 

 Per Curiam. Judgment affirmed.